With that, we'll move to the final case on the argument calendar, Powell v. Rasmussen. So we'll reserve five minutes. Is the time for this case 20? I believe so, yes. Okay, so you're 15 and your co-counsel is 5. Yes. Okay, got it. Thank you. There are two cases that you're on together. Yes, yes, yes, yes. May it please the court, Steve Nadeau on behalf of Dennis Rasmussen. The court has asked the parties to respond to the question of whether or not Oregon law is ambiguous as to the effect of ORS 60.952, subsection 6, on the non-securities related claims in this case. And those claims I'm going to refer to this morning as the tort claims as compared to the oppression claims. I think the answer to this question is that, is resolved by the Grey Dog case. And the answer is that there is no ambiguity and that as a result of the election by Dennis Rasmussen to purchase the plaintiff's shares, that ended the case as to both the oppression claims and the tort claims. So, counsel, the Grey Dog decision talked about, well, there are some things that clearly aren't involved in giving up and I think they mentioned the slip and fall at the corporate office. Yes. All right. So, let me give you a hypothetical. What if the allegation were that your client's son and daughter-in-law, that there was an envelope on the table with a lot of cash in it from the corporation for the sister. And that your three individuals just saw the envelope there and stole it. Stole the cash that came from the company, just stole it, converted it. Would that be on the slip and fall side? Boy, that's a tough one, Your Honor. The cash came from the company. Cash came from the company, sitting within an envelope. She was going to take it home, put it in the bank, and the three people just stole it. Slip and fall side or oppression side? I think it would be how the plaintiff would present that case. If they were arguing that, for example, that the reason they were able to steal the money was because they understood that the money came from the corporation and they knew that it was on the table to be stolen based upon their capacity as being managers of the corporation, then I think it would fall more on the oppression side as opposed to the slip and fall side. So it would depend on the facts. The fact that it was in the same complaint wouldn't be determinative, just like if the slip and fall were in the same complaint. You can still go with that. Yes, yes. But you're saying there's still no ambiguity about any of the claims here. Well, I think because so you have to look at the claims in this case brought by the plaintiff were all based on her status as a shareholder. And then the other key component of this is all of the tort claims, excuse me, back up, the oppression claims were based on the same factual transactions that underlined the tort claims. So the conduct here that's at issue between the tort claims and the oppression claims is identical. And the interesting thing is about the nature of this case and this whole statute is that oppression, as the court said in great odd, is a kind of a nebulous concept. And in the earlier cases in Oregon, specifically the Baker case, which is cited in the briefs, describe oppression as burdensome, harsh and wrongful conduct, a lack of probiety and fair dealing in the affairs of the company to the prejudice of some of its members or a visual departure from the standards of fair dealing on which every shareholder who is entrusted his money to the company is entitled to rely. And your position is that here the magistrate judge had no equitable discretion to allow any of the claims to be personally asserted, that the law required with the exercise of no discretion permitted that all of these claims be barred by the buyout? Yes, because there's no way to distinguish between the tort claims and the oppression claims. Again, going back to the analysis or the suggestion of the slip and fall, you can clearly distinguish between that and these oppression claims. In this case, again, because the tort claims were relied on the same factual transactions as the oppression claim, which would invoke... Should the magistrate judge have valued them in the buyout calculus? That's what the statute asks them to do, tells them to do. The magistrate judge is a she, right? Yes. She says she didn't do that, right? She should... I think I've read two orders where she said, I didn't do that. That's correct. So under your theory, are those just gone? No way the plaintiff can get those now? Under our theory, even though the judge, magistrate judge, said she did not value those claims, she also said in her findings that she couldn't find conspiracy from my client, that the plaintiff failed to prove that, and she also said that the plaintiff failed to prove... I think she said that because she clearly said that she hadn't gone in all those facts and such. So why wouldn't we, under your theory of the case, why wouldn't we send it back and say, well, if we agreed with you that you can't raise any of these claims now because you're no longer a shareholder, but they should have been all adjudicated as part of the buyout amount, why wouldn't we send it back and tell the magistrate judge, well, you said you weren't going to do it, but you needed to have done it, so do this and, you know, increase that four-point-whatever-million-dollar number. Given the kind of contradictory nature of her opinion, I think that's certainly a reasonable approach. And I guess the only... Can I ask you a follow-up? Yeah. So, you know, in some ways it wouldn't be that different. It would just be going back and doing all the stuff. I guess maybe you wouldn't have a jury, right? It might be just her deciding as an equity matter, sort of like a bankruptcy court would decide an issue that otherwise would be a jury outside the bankruptcy court. But so if we sent this back and she did that and then awarded it, how would that be much different than what she's doing now, except for she'd just pull it in and not have a jury and just decide all these issues and then give a different number than she gave before? A higher number, presumably. Yeah, well, number one, it's a major difference between having the judge re-look at the issue and having a brand-new trial in front of a jury, which is what she's currently, the order is requiring. And the second thing is, is we've, as I pointed out in our brief, we spent six days in a bench trial and all of the issues that the plaintiff wanted to raise with respect to— Yeah, you're just wrong about that. I mean, I read your brief. You're just wrong about that. I mean, because the magistrate judge says that's not what happened. I mean, she, you know, even if that's what you think would happen, that's not what she thinks happened. She thinks that a lot of these issues weren't completely so stout in that first. So the question, I guess, is what do we do? We're a bit of a mess here because what do we do with it now if we agree with you that you can't have a— that they can't send these issues to a jury now, that they're gone. But if we think that they should have been done originally in that other— and another question I wanted to ask, I'm sorry, is, is there a difference between the derivative claims and their own claims in this regard? I don't believe so. Why do they not—why under Oregon law do they waive their personal claims? I totally see why you would waive your derivative claims because you can't—you're now no longer a shareholder, so you can't bring claims on behalf of the company. But why do you waive your personal claims? Well, the personal claims, again, arise out of her status as a shareholder. And so once the shares are bought, she's no longer a shareholder. And, again, the statute asks the court to take into account in its valuation the conduct that gave rise to the claim. So I'm following you there. So your view would be even those personal claims should have been addressed as part— the personal and the derivative claims should have been addressed as part of that whole evaluation. Exactly, Your Honor. So what do we do if we don't—assume, for the sake of argument, that the judge did not address those and erred by not—what do we do now? Send it back to her. To presumably roll all that in and it just won't have a jury trial, but it would be pretty much the same thing they're asking for, right? Well, I would argue that we wouldn't put on any additional evidence because, again, the plaintiff— You can argue that with the magistrate judge, but I get the idea that she's going to disagree with you because she's already said there's a whole bunch of stuff she didn't consider. She says that in her decision. You know, she basically—the way I read her decision, I went there, but I said, yeah, there was all these rabbit trails we could have chased, but I got the impression that she kind of cut them off because she said, okay, we're going to do this other stuff later. If she was wrong about that, then she's going to have to chase those rabbit trails now and go back. But, again, neither the judge nor the plaintiff identified anywhere in the record where they were prohibited—the plaintiff was prohibited from putting on any evidence that the plaintiff wanted to put on, and no witnesses were excluded. But the magistrate says that expanding the hearing in that way would have defeated the purpose of the statute. So, I mean, I think she's pretty clear that, you know, she didn't do it. Well, again, I think it would be—it can go back to the magistrate judge, and if she wants to take on additional testimony, then, you know, again— I'm a little surprised you guys want to be back and forth. You have all these things tried in front of this magistrate, just reading it instead of a jury. The magistrate judge, she kind of tipped her hand, I feel like, a little bit of where she's at on this. She's—why do you want the magistrate judge instead of a jury? Because she said she couldn't find collusion, and she also said she couldn't find that the plaintiff proved that with the claim against Colton was collectible. So both of those two factors would then lead us back to the $4.5 million valuation. So, counsel, I want to switch gears a little, and I have a jurisdiction question. Yes. So unlike your friend, you have clearly appealed both the going forward of the individual claims and the assignment of the derivative claims. And so here's my question. Even if I were to agree with you that the assignment of the derivative claims was sort of tied up with the receiver issue, inextricably entwined, how would that be the case with the individual claims? Why would that be inextricably intertwined in the same way as the derivative claims? Yeah. I think the jurisdiction—the strong argument for jurisdiction in this case is that after the election to purchase the shares and the stay was entered, that is an injunction because it changed the nature. Okay. Well, let's say—I understand your argument there. Let's say I disagreed with you hypothetically on the injunction issue. Would you agree that the individual claims are not inextricably intertwined with the receiver issue? I would not agree with that because, again, the way the court— the court has appointed the receiver, and the receiver continues to this day, even though the plaintiff has been paid her fair value for— But is any part of what the receiver—I mean, I think that the magistrate judge said, you know, on the derivative claims, or at least on the derivative claims, that could come out of, like, the pot. But is there anything in which she said the money for the individual claims could come out of the same pot? If it's there, I don't see it there. I don't understand, Your Honor. I'm sorry. Okay. So the magistrate judge said the money that could be left over could go to pay the derivative claims that were assigned to the plaintiff. Yes. But I don't see anything in there where the magistrate judge said that would be true with regard to the direct non-derivative claims. Yeah. I don't think she made a distinction between— Judgment arises out of the retrying the tort claims. Because even for the non-derivative claims, in theory, your client may not have the money. I mean, the money he has is his farm. That's the asset. Yes. And that seemed to be why she continued to leave the receiver in place to make sure it didn't waste that asset and keep it available for the derivative claims, but also, presumably, the pot claims too. Yes, for both. I'm not sure that's the way I read her order, but I understand your argument. All right. Thank you. So I'm going to— Well, we took up a lot of your time with questions. We'll give you some extra time for a rebuttal. And now Mr. Cox. Good afternoon. I'm Michael Cox on behalf of Colton and Heidi Rasmussen. And I listened to the argument that you just had with my colleague. And one of the questions you had was about the $1,000 being taken and absconded with one way or the other and whether that would be covered in the exclusion under Section 5D, which then bans shareholder claims. Section 1 is the section that talks about what claims are covered under this statute. And my belief is the example you gave would be covered under the statute. What about if it was Plaintiff's Matisse hanging on the wall? If it wasn't a corporate asset? So as I understood your question— No, you understood my question correctly. Is that there was $1,000 that was corporate money— That was going to go—that had already been earmarked to her. Earmarked to her. It was still corporate money. So under the statute, some of the claims that are involved in this being dealt with and resolved are the corporate assets are being misapplied or wasted. But if they stole her Matisse hanging on the wall, she'd be able to go forward with that. I believe—I would agree with that, Your Honor. I think the issue is to whether it falls under the umbrella of being a corporate or shareholder. But what if the money was actually her money? They'd already given it to her, and she was about ready to walk out and decides to use the restroom. So now it's her money. It's not the corporate's money. How is that different than—I mean, just everything—the reason I'm asking is, does everything turn on whether the corporation still owns it versus whether she— Right. I think if it's down the road, then it's not covered. But if it's—I think the claims we're dealing with in this case are claims that my colleague's client or my client wasted or misapplied corporate assets. Yeah. Is there a direct claim for those? The line is whether it's the argument is you were doing something wrong with corporate stuff versus you did something—you ran your car into me. I would agree with that. Now to address the issue you raised, Judge, is the issue where we get into 5D, when you're in Section 5D and the language is where the court is to determine the fair market value of the shares, and it says, taking into account any impact on the value of the shares resulting from the actions giving rise to a proceeding under Subsection 1. And as you noted, the court didn't do that. The court touched on it, specifically in regard to my client, saying any judgment against my client is probably not collectible, and so it probably doesn't have any value, but then didn't do the full analysis and add it into a calculation. But what I would point out there is that has not been raised as an error by the other side to you, that the judge committed an error in not applying this section. We've raised to you the error that the judge has allowed these oppression claims to continue, these shareholder claims to continue. Well, but they're the appellee. What's that? They don't have to raise errors. I understand that, Judge, and to some extent, I would say that the issues we put in front of you, in which I'm running out of time, so I do want to point out the issues we've put in front of you and that we think, I actually think, should go to the Oregon Supreme Court. I do, when I read the comment on certification, I was intrigued by it, and I took a closer look and I thought, what would the question be that would go to the Oregon Supreme Court, and this is what I wrote last night and this morning thinking about it. The question would be whether the district court judge has legal authority under ORS 60.952 to allow Deborah to continue with her shareholder claims, derivative and direct, after a sale purchase judgment under Section 5 and 6, like we have here. And I would argue that that language is clear, but that there's the ambiguity as the disagreement on the interpretation of the statute. Well, I think that's a good potential question, but I take it it would be the claim she's asserted here. Yes. Even though the magistrate judge has said, and when we go forward, I'll let you amend to put in anything you want. Yeah. I understand, Judge. And I think the ambiguity that strikes at the heart of this is the district court judge understood her role, that she did have equity under Section 3, whereas our position is, no, it's clear she had to just go under Section 5, which sets forth the remedy once this election under Section 6 is made, and that's all that she could do. She could not go back to Section 3 and say, I have equity there. And you agree with me that you have not challenged the district court's decision to allow the direct claims against your clients to go forward. Your appeal, your interlocutory appeal, only concerns the derivative claims. Our interlocutory appeal was solely focused on the derivative claims. Thank you. Thank you, Judge. May it please the Court, Cody Hosley for the plaintiff, Debra Powell. I'd like to address the focus of the argument so far has concerned the assignment of the claims to the plaintiff. The statute, I think, is clear that there is broad equitable power in the part of the court in conducting the fair value proceedings, not only under Section 3, but under Subsection 2 is a broad list of equitable powers listed out. Subsection 3 expressly states that that's not the limit of the equitable powers of the court. In Subsection 5C, or 2C, it specifically talks about the ability of the court to have equitable terms in buyout. Did you, as I want to have you continue on this, but I had a question here. Did you or your client encourage the magistrate judge here to sort of break things apart the way the magistrate judge did, or was that sort of a surprise to the parties that the magistrate judge did not address these other claims as part of the evaluation? The plaintiff initially understood that the court would ultimately lump everything in, and that is how it was tried initially. Ultimately, in the closing argument, the plaintiff did note that there would be a jury trial violation, jury trial right violation, if the plaintiff's ability to bring these claims initially... So, counsel, taking obviously what you said at face value, that plaintiff's view in the trial was it was going to put on everything it had. Why is your friend wrong that if we send this back, it shouldn't be based on the evidence that was presented, if your understanding going in was that you were going to put on everything, including the kitchen sink? Well, we were going to put on everything that we had. That's not to say, A, necessarily we had everything that we wanted to be able to put on or that we weren't hindered in any way. Okay. Is that in the record? Was there any objection you made to the magistrate judge saying we have these direct and derivative claims that cost our client money, we don't have time, we haven't been able to do the discovery, so we want to particularly reserve them or accept them out for a second proceeding? Is there anything in the record that says that? I don't believe so, Your Honor. There is, in the closing argument, there is the argument made that forcing these claims, which under the Seventh Amendment, the Ross case, as well as under Oregon constitutional law, there's a right to a jury trial, the argument was made that then converting that into an equitable proceeding where the judge... But, counsel, even if we felt hypothetically that that claim had any kind of merit, isn't that too late? I mean, isn't it too late to wait until closing argument to essentially demand the jury? Doesn't that have to be done before the proceeding starts? I mean, in the normal civil context, failure to demand a jury before things start waives the right. I'd have two responses to that, Your Honor. One is to agree the argument is that by proceeding with the proceedings without the jury that that constitutes a waiver, the argument of waiver can be waived. And here, that has never been asserted by the defendants in this case. So the waiver argument was waived. The only argument they made is that by the filing of the complaint, the plaintiff waived all her rights. And that is a very separate argument than the one Your Honor just mentioned. A second argument on this point is that here we have a judge who ruled that these claims needed to be carved out and presented to a jury. And so it's not for us to assign errors. Another way to think about it is an alternative basis for affirmance of what the judge did here, whether the plaintiff had raised the jury trial issue before trial or after the trial and during closing argument. It's an alternative basis for affirmance. When you were making this jury argument, what were you envisioning? Were you envisioning this process where you would like the way it played out or were you envisioning some sort of like moving along and then putting a jury trial in the middle and then taking that jury verdict and the judge like importing it along with the evaluation and coming up with that final. I was not the trial counsel, Your Honor. I didn't have a view as I was going through it. You don't know what, I mean, usually when you're arguing, making an argument that something is being, you know, an argument of error, you know, in this case, not getting a jury, you're saying that the judge should, you know, I'm just saying there's an error going on here. I have no idea how I was to do it, but, you know, there's an error going on here. Like you must have, there must have been some sort of push to have the magistrate judge do something different. What was it? You don't know? What was the motivation? No, what was, what were you asking the magistrate judge to do instead of what she did? Well, initially, ultimately, it was the claim was made that there was the $1.9 million. That was what the expert Moronis testified to that had been misappropriated by the defendants. And then the judge indicated reticence about ruling on the merits of the claim. And a plaintiff argued, yeah, that what should be done is that that should be carved out, presented to a jury, because that's the appropriate way to do it, and the court has the equitable ability to do that. Afterwards? As part of closing, before the verdict was rendered, as part of closing argument. So you do the whole equitable thing here, and then you kind of put a pause on that, hold a jury trial, and then you put it all together? Is that what the idea was? If I'm understanding correctly, the question is whether the plaintiff had argued before the closing argument that the claims should go to a jury. And the answer to that is no, I don't believe the plaintiff had argued that prior to that point, but it was before the verdict was rendered in the form of the findings of fact and conclusions of law that the jury trial argument was made. Counsel, do you see anything that you think we should certify to the Oregon Supreme Court? Well, I have two answers to that. One is, ultimately, if this court concludes that under the jury trial right, that these claims ought to go to a jury, and that to the degree that the statute, even if ambiguity is resolved in a holding that carving out the claims is not allowed by the statute, if that were the holding, then you would have a clear, I mean, that would be the question, something along the lines of what my friend said earlier with the modification, Judge Bennett, you had on it, what the form of that question would be. Even if the Oregon Supreme Court says under the statute there is no equitable discretion to carve out the claims, you have to resolve them in this fair value proceeding. If you get that clear statement of state law, that still raises the question of, is the statute constitutional? This is a one-of-a-kind, in-the-nation statute. Every other statute that is similar, quote, unquote, and it's based on the Model Business Corporation Act, this forced buyout procedure only applies in the context of dissolution. Constitutional under Oregon law? And Federal law as well. And what Federal provision, what Federal constitutional provision would this apply to? The Seventh Amendment, Your Honor. The Ross case that's cited in our brief talks about how the Seventh Amendment guarantees a jury trial on shareholder derivative claims. And, of course, the direct claims, you have a jury trial right as well. These are claims seeking damages, at least as to those claims here that are damages seeking. And then, so under the state and the Federal constitutional jury trial right, you have this right to a jury trial. And then what the statute does, if the certified question were to go against us and say that the trial court has to resolve all of these claims by the bench trial of a fair value proceeding, if that is what's happening here, it's not the destruction of a claim, the elimination of a claim, as defendants argue. What it is is the conversion of a jury trial claim into a bench trial claim. And that would be the violation of the Seventh Amendment  Okay. Counsel, this probably isn't in the record, and if you don't know, that's fine. At this point, how much money is left over? You mean what is the corporation's worth at this point? Yeah. I don't know, Your Honor. I don't know. So, Counsel, can I ask you, I just want to walk through. The different possibilities would be that we just conclude, you know, as far as on the other side kind of want, that we would just say, nope, you can't, you know, Oregon law is clear enough to us, we don't have to certify this, that you just can't bring these kind of claims once you're no longer a shareholder. You can't bring these kind of claims, affirm the magistrate judge. The challenge with that is if we presumably, if we think that, we might think that, like, they should have actually been brought, they should have been resolved in the process that already happened, the evaluation hearing. So what I want to know from you, if we don't allow, if we were to agree with that latter thing, that you can't take, that you can't bring these claims now, what would you, what would your argument be that we should do? Would it be that we send it back? I assume you still want a jury trial, you know, in theory, in your perfect world, we would say, well, there needs to be a jury trial, so there should be a jury trial, but it should kind of be sandwiched within, or, you know, you basically would have the equitable evaluation, you'd have the jury trial, and then you'd have a final number that all of that would spit out, right, so that you're getting, or if you don't have a right to a jury trial, you'd still want the same thing, it would just all be, it would all be bench trial. But is that, I'm trying to figure out what your preference is, if we were to agree with the other side that you can't bring the, that your client no longer has a right to bring these claims, now that she's no longer a shareholder. Yeah, if the court agreed that she doesn't have the ability to continue to pursue these claims as sort of standalone claims outside of the fair value process, then the, and whether that was achieved in part through certification or not, if that's the ultimate answer, then we would ask that the case be sent back to Judge Russo so that she can put a number on these claims, because she clearly did not, you know, she carved it out, she wasn't deciding, as Your Honor already noted, so then she would in that instance need to decide it. And your first, okay, so, and your first preference in that circumstance would be that she take these claims, give them to a jury, have a jury, have the jury put a number on them, and then sort of readjust the $4.some million? Well, I don't think it would reduce the $4 million already. As Your Honor had noted, it would, if there's, you know, damages, if it's proven out, it would add to it. But so she would, and that's what she said in her limited judgment, that once these claims got liquidated, then that would be tacked into what would be the final judgment. So the reason I ask that is, in some ways, it sort of seems a little bit, a little bit much ado about nothing. Because in one instance, we'd say you can't go forward and do these things, but we are sort of, we are reversing what the, I think we'd have to say we're reversing the valuation, we're getting rid of the $4.some million, redo that, but this time include in there the valuation, whether you use a jury trial or not. And then you've got to spit out another number, then you've got to spit out another, that's why I'm not sure I agree with you, but like you said, I don't think it affects the $4.some million, but if that $4.some million number there, if your colleagues on the other side are right, you don't have a chance, you don't have a right to do any of this. We kind of have to reverse what's already happened in order to resurrect your right to do it under a view that once you've got that final number, you can't do that anymore. Once you've got that final number, you can't, your clients can't do anything about her personal or derivative claims anymore. Yeah, I see, I think what Your Honor is saying, she did carve out the distinction between the hard assets and the soft assets, the soft assets being these claims. And the hard assets was determined and a huge portion of the farm was sold and that money has been paid. Presumably she still reached that same number on the hard asset side. But she can't, if once she has that final decision on the valuation, that your client's just out of luck for anything after that, then you kind of have to get rid of that. I agree. And then you have to go redo it again. Now, you might reach the exact same number on the hard assets, and this time when you do the soft assets, it will be some number. But you still have to get rid of the $4.some million number, at least initially, and redo it, correct? I would think that the Court could remand just as regarding the assigned claims, the soft number, because she had carved that out as separate. I grant you that the money award potentially, yeah, I think that that's right. It's complicated because she now has the money. You can't unsell the farm. But instead of doing it forward-looking, you're kind of reversing in part and doing it backward-looking. Well, and, you know, one thing in favor of certification here, Your Honor, is this question under the statute, is this permissible? Because the statute gives a lot of equitable discretion in the Court and equitable modification of the purchase. And here the Court carves out, and the Court makes clear, it's an equitable remedy given the conduct occurred here and the way that the trial judge saw the trial happening to bring these claims out. So, counsel, if we were inclined to basically not accept your jury right argument, send it back to something that the magistrate judge is going to, and I'll use this as a shorthand value, the soft assets, who would be in that instance the judgment against? Who would be the judgment debtors? You mean of the ultimate trial court judgment or of the appellate judgment? No, if we send it back and the magistrate judge had this non-jury proceeding looking at the valuation of the soft assets and found in your favor and had a judgment, who would the judgment go against? It would go against the named defendants, in this case Dennis and Colton. So there would be an in personam judgment arising out of this equitable proceeding remand against the three individually named defendants? Well, you know, maybe I misunderstood. What Your Honor is contemplating is that everything just gets folded into this fair value hearing and that's just one big ball of wax and ultimately becomes part of the purchase price that Dennis is paying. And so Dennis is the payor and it would just be Dennis. But wouldn't it be, I thought your answer was going to be that it goes back and the soft assets get valued at $2 million, say. The derivative claims against the company, she's bringing these derivative claims against the company, that's $2 million. So then I think the valuation would be, well the company owes $2 million, but that all comes out of Dennis' pocket because he's the person that caused the problem. And then plus we owe $4.5 or something. The valuation might work, but it would be one final number that the company would have to pay and it would be higher than that. Well, it is Dennis who's buying the shares, not the company itself. And here, you know, the custodian was appointed because Dennis doesn't have money to buy the shares at what they're worth. And so the custodian was appointed to sell the company assets because that is how you finance Dennis' purchase. And it's just a little confusing to me that, I mean, there could be joint theoretically, in this theoretical equitable proceeding, there could be a finding of joint tort fees or liability. But if there weren't, it would just seem strange to me that there would be a judgment against Dennis for the wrongs of his son and daughter-in-law if there weren't joint tort fees or liability. Well, but that, I mean, we have argued that there is a conspiracy here. Well, you've argued that. Right. And the judge hasn't resolved that yet. I mean, that's not a resolved issue. That's part of the issue that Judge Russo has sent to the jury. If this Court were then to say, no, Judge Russo needs to decide that, then she would ultimately decide that. And if she found that there was that basis for that joint liability, then that would ultimately go into the judgment if the plaintiff wasn't paid in full from any, you know, from whatever other means there would be to satisfy the judgment. If Your Honor, if I may just push back on the notion that derivative claims die at the moment she gets paid off, because that's, under our reading of the law, that's not correct. The statute, 5D, specifically says that the judge can set the time when the rights of a shareholder expire. And here, you know, it says, unless the purchase order is modified by the court, shall have no further rights as a shareholder from the date, and then it ends specified by the court. The court has the ability to keep shareholder rights open even after the shareholder has been paid. But it does, you know, it does say 5AA, when determining fair value, the court shall take into account any impact on the value of the shares resulting from the actions giving rise to the proceeding. So it seems like it's designed to try to get this stuff rolled into the fair valuation. Is your position, yeah, you could do it that way, so it wouldn't have been wrong if the magistrate judge had done it that way. But you also can kick stuff out if you, you know, Just like with a marketability discount, the Hill and Ibarra cases make clear that when there is no oppression, the court can apply a marketability discount, or it can choose not to apply a marketability discount. Argument would be here, given the circumstances and the equities of the case, the court can carve out these claims. This is just under a statutory analysis, or not. I just don't see how that squares with Grey Dog, which I think you have the Oregon Supreme Court saying that the whole point of the statute is to cut all of that short. There may be some injustice that results, but so be it. This is the procedure that the legislature has come up with. So if you could just tell me how, I guess what you've just said, fits into that scheme of shortcutting all of this. Right, right. Well, Grey Dog also talks about how part of the law is to protect the oppressed shareholder, the minority shareholder. And also, Grey Dog is a case about whether the statute was even triggered in the first place. The court isn't talking about in detail what goes into a fair value hearing, what is the equitable power of a court once it's in the fair value construct. You know, largely it's dictum in that regard in describing how it works, because the court is really ultimately holding in Grey Dog that the plaintiff in the contract claims seeking just damages. Well, but the court does spend quite a bit of time in Grey Dog sort of going into the history and the purposes of the statute. So I don't think it's fair to say that they didn't treat the statute in passing in Grey Dog. That's true. That's true, Your Honor. If the court has any further questions, I'm happy to answer them.  Thank you, counsel. Yeah, we'll give you two minutes for rebuttal. Your Honor, so on the question of the jury trial, I think the Horton case makes it clear that the right to the jury trial, the Oregon legislature can modify remedies, can modify claims for relief. That's exactly what 60.952 did. So it's kind of a red herring, this notion that- What about the federal right? They have a claim that they have a federal right. Right, and I don't know the answer to that. The second issue is on this broad equitable power question, about which the court and the plaintiff has identified the general equitable power under subsection 3 of the statute. And again, the statute has got six different subsections, and what happens is you start to trigger the statute by filing a proceeding under subsection 1. Then subsection 6 is then triggered, which allows the shareholders or the corporation to elect to purchase the shares, and that takes it out of the subsection 1, 2, and 3 provisions of the statute. And again, Grey Dog specifically said that ORS 60.9521 identifies the grounds for liability that a shareholder of a closely held corporation must establish before the court will grant relief against the corporation or the other shareholder. And then it goes on to say once a shareholder establishes liability, the court may order one or more of the remedies listed in subsection 2. So the whole equitable powers of this court under subsection 1 and 2 and 3 don't get triggered or removed once the shareholder purchase election is triggered. And then, again, the dicta of the Oregon Supreme Court identifying that when a shareholder files a proceeding under subsection 1, they in effect make an offer to sell their shares to the corporation or other shareholder without resolving the merits of the complaint. I think, again, it's dicta, but it's well-reasoned dicta, and it flows from the purposes that the Oregon Supreme Court found in adopting the legislation, and the primary purpose was to reduce the costs, both financial and emotional, of shareholder litigation. Do you have a final point, counsel? Yes. We would ask that the court reverse the district court's ruling. All right. We thank counsel for your argument, and the case just argued is submitted. With that, we are adjourned for the day. All rise.
judges: BENNETT, VANDYKE, THOMAS